UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY CARROLL, PAUL JENVEY,
WAYNE CONRAD SCHREK and JACOBY
WHITACRE, individually and on behalf
of a Class of persons similarly situated,

         Plaintiffs,

                                   Case No.: 04-CV-74984-DT

vs.

                                   HON. JOHN CORBETT O'MEARA
                                   MAG. JUDGE WALLACE CAPEL, JR.

CITY OF DETROIT,

         Defendant.

_____/

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

       Before the Court is Plaintiffs' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56

"with respect to liability only."[1]

## II.    PROCEDURAL HISTORY

       1.      On December 22, 2004, Plaintiffs filed their Complaint.  (See Docket Entry No. 1.)

_____

[1]Plaintiffs' Motion for Summary Judgment and Brief in Support thereof filed on June 22, 2005 (hereinafter "Plaintiffs' Brief").  Defendants Responded to Plaintiffs' Brief on July 14, 2005 (hereinafter "Defendant's Brief").  Plaintiffs filed a Reply Brief on July 20, 2005 (hereinafter, "Plaintiffs' Reply").  "Defendant City of Detroit's Supplemental Authorities in Support of its Response to Plaintiffs' Motion for Class Certification and Summary Disposition," was filed August 10, 2005.  As to the Supplemental Authorities as they relate to Class Certification, the issue is moot. See the Court's Order dated July 20, 2005, Certifying the Class.  The Supplemental Authorities as they relate to the Motion for Summary Judgement, have been reviewed; however, Defendant makes no argument in support of these authorities and they will not be discussed further.

2.      Summons return was executed on January 4, 2005.  (See Docket Entry No.  2.)

3.      On January 11, 2005, Defendant filed its Answer, Affirmative Defenses, and Jury demand.  (See Docket Entry No.  3.)

4.      On January 14, 2005, an Order was entered by Judge Robert H. Cleland Dismissing Count IV.  (See Docket Entry No.  4.)

5.      On January 19, 2005, the case was referred to the undersigned for all pretrial proceedings.  (See Docket Entry No.  6.)

6.      On January 25, 2005, a Pretrial Scheduling Conference was noticed, and same occurred on February 14, 2005.  (See Docket Entry No. 5 and minute entry dated February 14, 2005.)

7.      On February 16, 2005, a Scheduling Order was entered and subsequently on February 24, 2005, same was revised.  (See Docket Entry Nos. 7 and 8.)

8.      Paul Jenvey was Joined by Stipulation and Order on March 22, 2005.  (See Docket Entry No.  9.)

9.      On March 24, 2005, a Motion for Preliminary Injunction was filed by all Plaintiffs as well as a Motion to Certify the Class. (See Docket Entry Nos. 10 and 11.)

10.     On April 20, 2005, the Motion for Preliminary Injunction was temporarily withdrawn.  (See Docket Entry No. 17 and minute entry.)

11.     On April 22, 2005, Defendant Responded to the Motion to Certify the Class.  (See Docket Entry No. 18.)

12.     On April 28, 2005, Plaintiffs filed an Ex-Parte Motion for Leave to File a Reply Brief in Excess of Five Pages.  On May 3, 2005, the undersigned granted same.  On May 3, 2005, Plaintiffs' Reply Brief was filed.  (See Docket Entry Nos. 20, 23, and 24.)

13.     On April 29, 2005, Plaintiff Wayne Conrad Schrek filed a First Amended Complaint. On April 29, 2005, Plaintiffs Bradley Carroll, Paul Jenvey, and Jacoby Whitacre, filed a First Amended "Class Action" Complaint.  (See Docket Entry Nos. 21 and 22.)

14.     On May 23, 2005, the Motion to Certify the Class was heard by the undersigned and the parties were ordered to file supplemental briefs.  Hearing was reset for June 13, 2005.  (See Minute Entry.)

15.     On June 6, 2005, Defendant filed its Supplemental Brief.  On June 7, 2005, Plaintiffs filed their Sur-Reply Brief.  (See Docket Entry Nos. 26 and 27.)

16.     On June 13, 2005, the undersigned heard the Motion to Certify the Class again and Granted the certification.  (See Minute Entry.)

17.     On June 20, 2005, Defendant filed separate Answers to the Amended Complaints of the respective Plaintiffs with Affirmative Defenses and Jury Demand.  (See Docket Entry Nos. 29 and 30.)

18.     On June 22, 2005, Plaintiffs filed their Motion for Summary Judgment.  (See Docket Entry No. 31.)

19.     On July 14, 2005, Defendant Responded to the Motion for Summary Judgment.  (See Docket Entry No. 33.)

3

20.     On July 20, 2005, Plaintiffs Replied to the Defendant's Response.  (See Docket Entry No. 34.)

21.     On July 20, 2005, an Order was entered by the undersigned certifying the class.  (See Docket Entry No.  35.)

22.     On July 26, 2005, the undersigned heard the Motion for Summary Judgment and took same under advisement.  (See Minute Entry.)

## III.     STANDARD OF REVIEW

Under Fed.R.Civ.P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law."  In essence, Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  Bender v. Southland Corp., 749 F.2d 1205, 1210-1211 (6th Cir. 1984). However, the Court is not permitted to judge the evidence or make findings of fact.  60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  This burden may be discharged by showing there is an absence of evidence to support the nonmoving party's case.  Celotex Corp., 477 U.S. at 325.  Once the moving party discharges this burden, it then shifts to the nonmoving party to present specific facts showing a genuine triable

4

issue. Fed.R.Civ.P. 56(e).  To create a genuine issue of material fact, the nonmoving party must

produce evidence sufficient to require submission of the issue to a jury.  Lucas v. Leaseway Multi

Transp. Serv. Inc., 738 F.Supp. 214, 217 (E.D. Mich. 1990).

## IV.   DISCUSSION

### A.   Prior Ordinance[2]

The Prior Ordinance criminalized selling or offering for sale tickets to sports or

entertainment events in certain areas of the City of Detroit at any price.[3]  This ordinance was in place

---

[2]The Prior Ordinance reads:
Sec. 5-1-3. Tickets for admission to shows, concerts, etc.; sales on streets, etc. sales at prices greater than printed on tickets.

> No person in the ordinary course of business shall stand or remain in any public street, alley, sidewalk or other public place, or without written permission from the owner or without written permission from the owner or his designee, on the property of another for the purpose of selling or offering for sale any theater tickets of admission to shows, concerts, athletic events or public entertainment; nor shall any person sell or offer for sale any theater ticket or ticket of admission to a show, concert, athletic event or public entertainment on any property within the outermost boundaries of any city block on which is located the theater, concert hall, athletic or public entertainment facility at which the ticket will be used, or the streets adjacent thereto, without written permission from the owner of the property or his designee, with the exception of the civic center entertainment facilities; nor shall any person sell or offer for sale any theater tickets or tickets of admission to shows, concerts, athletic events or public entertainment at a price greater than printed on the ticket unless authorized by local or state law.  Plaintiff's Brief Exhibit 1.

[3]This ordinance criminalizes both "scalping" and ticket sales or offers to sell at face-value or below.  "A law is overbroad under the First Amendment if it 'reaches a substantial number of impermissible applications' relative to the law's legitimate sweep." Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee, 274 F.3d 377, 387 (6th Cir. 2001) (citing New York v. Ferber, 458 U.S. 747, 771, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). This ordinance is overly broad in the sense that it "impos[es] restrictions so broad that it chills speech outside the purview of its legitimate regulatory purpose."  Deja Vu, 274 F.3d at 387 (citing Staley v. Jones, 239 F.3d 769, 779 (6th Cir. 2001)).  See Subpart D., supra, on page 19, n. 38.  The doctrine "'constitutes an exception to traditional rules of standing' and allows claimants to assert the rights of parties not before the court." Deja Vu, 274 F.3d at 387.  However, Plaintiffs here were

5

until April 7, 2004.  It prohibited sales or offers to sell within one city block of venues at which the tickets could be used.  It allowed exceptions for the sale and offer to sell outside civic center entertainment venues, i.e., Joe Louis Arena and Cobo Hall.

### 1.   Presumption of Validity

Defendant argues that there is a presumption that the Ordinance is valid and Plaintiffs have failed to rebut that presumption.[4]  In <u>Barden Detroit Casino, L.L.C. v. City of Detroit</u>, 230 F.3d 848, 853 (6th Cir. 2000), the court noted that "the district court ably analyzed this argument, noting that well-established Michigan law accords a strong presumption of constitutionality to local ordinances." <u>Id.</u>  (citing <u>Barden Detroit Casino, L.L.C. v. City of Detroit</u>, 59 F.Supp.2d 641, 672 (E.D. Mich. 1999) (citing <u>Cady v. City of Detroit</u>, 289 Mich. 499, 505, 286 N.W. 805, 807 (1939))).  The district court stated,

> under well-established law, local ordinances--like state statutes--are entitled to a strong presumption of constitutionality. With regard to the presumption of constitutionality, the rule applicable to ordinances of a city government is the same as that applied to statutes passed by the legislature. A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation.

<u>Barden</u>, 59 F.Supp.2d at 672 (citing <u>Cady</u>, 289 Mich. at 505, 286 N.W. at 807).

---

in fact charged under the Ordinance; therefore, they already have standing, and the overbreadth doctrine need not be discussed further at this point.  Scalping is also criminalized under a separate Ordinance, which reads:

Sec. 5-1-2.  Sales at price greater than printed on ticket prohibited.

Unless authorized by state law or by this Code, no person shall sell, (Cont'd. . . .) (. . . .cont'd) or offer for sale, any ticket of admission to any athletic event, concert, public entertainment, show, or theater at a price greater than the price that is printed on the ticket.  Plaintiff's Brief, Exhibit 3.

[4]Defendant's Brief at pages 3-5.

However, the Sixth Circuit case relied on by Defendant found that there was not a presumption of validity where there was not a valid exercise of police power by the City. <u>Fair Housing Advocates Assn, Inc. v. City of Richmond Heights, Ohio</u>, 209 F.3d 626, 635 (6th Cir. 2000) (citations omitted). The Court held that "[t]he presumption of validity standard we applied in <u>Kutrom</u> was based on the 'rational basis' test utilized in addressing constitutional challenges to 'economic or social welfare regulation adopted in exercise of police powers;'" however, "[b]y contrast, the Cities in [<u>Fair Housing</u> were] attempting to invoke an exemption under the FHA, and thus <u>Kutrom</u> is inapposite. Accordingly, the district court's reliance on <u>Kutrom</u>, and its conclusion that the Cities' occupancy ordinances are presumptively valid, was erroneous." <u>Fair Housing</u>, 209 F.3d 626, 635 (citing <u>Kutrom Corp. v. City of Center Line</u>, 979 F.2d 1171,1174 (6th Cir. 1992)). More importantly, the district court stated that "Plaintiff has the burden to show that the ordinance is unreasonable. <u>Id.</u> [] The city defendants need only point out 'a state of facts either known or which could reasonably be assumed' to support their ordinances in order to be entitled to the presumption of validity."[5] <u>Id.</u> at 1175. <u>Fair Housing Ass'n v. City of Richmond Heights</u>, 998 F.Supp. 825, 830 (N.D.Ohio 1998) (citing <u>Kutrom</u>, 979 F.2d at 1174).

In the case at bar, Plaintiffs argue that the Prior Ordinance distinguished between locations of the ticket sales and offers to sell at any price at any time, which is unreasonable and will be discussed further below. Presently, Defendant fails to point to a valid set of facts[6] regarding the

_____

[5]However, the district court also noted that "[t]he city defendants do not need to assert a specific reason for choosing the minimum amount of square footage per occupant to cap the number of occupants within a unit." <u>Fair Housing</u>, 998 F.Supp. at 830 (citation omitted).

[6]At oral argument, Defendant did state that the historical public ownership of the civic center may have been what prompted the exception. However, this reasoning offers nothing in the way of an argument for "reasonableness." For example, in <u>Fair Housing</u>, the following was determined

classification or the fact that the Ordinance criminalized tickets sold at any price at any time, which would support a presumption of validity.

Defendants also argue that they had the power to regulate ticket sales on public property as a Home Rule City.[7]  However, Defendant relies on People v. Trabucchi, 160 Mich. App. 792 (1987), a case dealing with tickets above face-value.  Plaintiffs here argue that the statute criminalizes tickets sold at any value, even below face-value.[8]  Defendant argues that under the Michigan Constitution and the Home Rule City Act, they have the power "to regulate or prohibit any trade, occupation, amusement, business or other activity within the City."[9]  Defendant relies on a series of case law from within Michigan as discussed below.

_____

"reasonable:"

> We find that the following evidence indicates that the Cities satisfied that burden. First, the Cities' occupancy ordinances "apply uniformly to *all* residents of *all* dwelling units." Edmonds, 514 U.S. at 733, 115 S.Ct. 1776.  Second, the Cities have presented convincing evidence that the ordinances were enacted "to protect health and safety by preventing dwelling overcrowding," not to (Cont'd. . . .)

> (. . . .cont'd) impermissibly limit the family composition of dwellings. Id. Third, Jarret and other Housing Advocates' experts testified that there were several *options* for determining maximum occupancy requirements - a minimum square feet per-person standard; a minimum number of square feet per-bedroom-per-person standard; and a two-person-per-bedroom standard. The Cities were surely permitted to choose which of these standards was the most appropriate for that particular city, particularly in light of the fact that Congress made clear that there is no national occupancy standard.

Fair Housing Advocates Ass'n, Inc. v. City of Richmond Heights, Ohio, 209 F.3d at 636.  Defendant here offers no such "convincing evidence."

[7]Defendant's Brief at pages 4-5.

[8]Plaintiff's Reply at page 5.

[9]Defendant's Brief at page 4.

8

In Worthington v. City of Kalamazoo, 71 Mich. App. 646, 651, 655 (1976), although Plaintiff argued that it treated tow services outside the city differently, the court held that "[t]he classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation," Id. (quoting Manistee Bank & Trust Co. v. McGowan, 394 Mich. 655, 671 232 N.W.2d 636, 642 (1975)), and found the ordinance at issue "applie[d] to all tow services equally and is not worded to unduly burden those operators having some or all of their storage areas outside of the city. It is clearly within the defendant city's authority to control towing within its boundaries."  In the present case, the classification of sellers outside certain venues does not appear reasonable.  Further, no purpose is offered for the Prior Ordinance; therefore, the Court cannot determine whether it "bear[s] a reasonable relation to the object of the legislation" under Worthington, 71 Mich. App. at 651.

In Michigan Towing Ass'n, Inc. v. City of Detroit, 370 Mich. 440, 454-55 122 N.W.2d 709, 715 (1963), the court held that "[a]fter due study and survey defendants determined the ordinance was necessary as a traffic regulation for the safety and convenience of the general public. There is nothing in the record presented to this Court that would justify substituting our judgment for that of the city in this respect."  There is no evidence of "due study" in the present case, and Defendant offers no reason for the classification, other than the historical public ownership of the civic center, which was presented at oral argument and is meritless.

In Kelley v. Boyne, 239 Mich. 204; 214 N.W. 316 (1927), the court held that regulation of certain business activities is for the Legislature and

> [i]ts determination comes within the proper exercise of the police power of the state unless affirmatively shown so unreasonable, oppressive, extravagant, and arbitrary as to needlessly invade property or personal rights as protected by the Constitution. 'A statute does not violate the equal protection clause merely because it is not

allembracing.' (internal citation omitted).  The distinction between sellers outside one venue and not another appears unreasonable and quite arbitrary to this Court. Therefore, Defendant's argument under <u>Kelley</u> also fails.

Defendant asserts that the Prior Ordinance did not create a classification; rather, it "simply  stated where on public streets outside of entertainment venues that ticket sales were illegal."[10]  This is a misstatement because the Prior Ordinance clearly distinguished between sellers outside certain venues, while explicitly excepting the civic center.  Further, Defendant alleges that it does not matter either way because another ordinance made the "sale of tickets, and anything else for that matter, in any 'parks, public places and boulevards' [illegal].  'Public places' include the Civic Center grounds and its entertainment facilities."[11]  However, the language of the other ordinance does nothing to cure the unconstitutionality of the one challenged here.

### 2.    Greater New Orleans Broadcasting Ass'n.

Plaintiffs argue that the Prior Ordinance is unconstitutional under <u>Greater New Orleans Broadcasting Ass'n, Inc. v. United States</u>, 527 U.S. 173, 119 S.Ct. 1923 (1999), which held

> [w]e need not resolve the question whether any lack of evidence in the record fails to satisfy the standard of proof under <u>Central Hudson</u>, however, because the flaw in the Government's case is more fundamental: The operation of § 1304 and its attendant regulatory regime is so pierced by exemptions and inconsistencies that the Government cannot hope to exonerate it. <u>See</u> <u>Rubin</u>, 514 U.S., at 488, 115 S.Ct. 1585.
>
> * * *
>
> Rather, the regulation distinguishes among the indistinct, permitting a variety of speech that poses the same risks the Government purports to fear, while banning messages unlikely to cause any harm at all.

---

[10]Defendant's Brief at page 6, n. 2.

[11]Defendant's Brief at page 6, n. 2, citing 1984 Detroit City Code §§ 40-1-1; 40-1-12; 40-4-3. Defendant fails to attach the relevant Sections of the Code cited here to its brief.

Greater New Orleans, 527 U.S. at 190, 195, 119 S.Ct. at 1933, 1935 (citations omitted).  Plaintiffs

also rely on Rubin v. Coors Brewing Co., 514 U.S. 476, 477, 115 S.Ct. 1585, 1587 (1995), for the

proposition that "[t]here is little chance that [the statute] can directly and materially advance its aim,

while other provisions of the same Act directly undermine and counteract its effects."  Plaintiffs

focus on the single exception carved out for persons selling outside the civic center facilities and

argue that same renders the Prior Ordinance unconstitutional.  However, the exceptions in Greater

New Orleans were numerous and the Court nevertheless went through the test under Central Hudson

and this court will do the same.

### 3.    Equal Protection

Plaintiffs argue that the Prior Ordinance violates equal protection because there is no

"legitimate governmental purpose that its classifications were created to further, and also [fail to]

demonstrate that the classifications are rationally related."[12]

> The Equal Protection Clause requires that "all persons similarly situated should be
> treated alike."  City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439,
> 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The Supreme Court has clarified, however,
> "Equal protection does not require that all persons be dealt with identically, but it
> does require that a distinction made have some relevance to the purposes for which
> the classification is made." Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15
> L.Ed.2d 620 (1966).
>
> * * *
>
> In a case such as ours, where commercial speech is involved, only "a limited
> measure of protection, commensurate with its subordinate position in the scale of
> First Amendment values" is required.  Ohralik v. Ohio State Bar Ass'n, 436 U.S.
> 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); see also Central Hudson Gas &
> Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 562-63, 100 S.Ct. 2343, 65
> L.Ed.2d 341 (1980) (holding that intermediate scrutiny applies to a First Amendment
> challenge involving commercial speech).  Because regulation of commercial speech
> is subject to intermediate scrutiny in a First Amendment challenge, it follows that
> equal protection claims involving commercial speech also are subject to the same

_____

[12]Plaintiffs' Brief at page 13.

11

level of review.  See R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 385, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (noting that the First Amendment underlies the Court's equal protection analysis).  Thus, we must decide whether the classifications in the statutes at issue are narrowly tailored to further a significant governmental interest.

Chambers v. Stengel, 256 F.3d 397, 401 (6th Cir. 2001).  Plaintiffs focus on the persons outside Joe Louis, who were actually ticketed under the Prior Ordinance, even though it excepted them.[13]  They argue that the classification fails equal protection scrutiny because the distinction between sellers outside the different venues furthers no governmental interest and that the City has admitted same.[14]

Defendant argues that the "government may regulate or ban entirely commercial speech which proposes an illegal transaction," in this case:  reselling tickets within five hundred feet of an event.[15]  Further, Defendant argues that as such, the speech is not entitled to First Amendment Protection.[16]  Defendant relies on a series of cases involving activities which are illegal in Michigan.[17]  However, Defendant's argument that the illegality is created by the same statute that is challenged here is simply circular and fails.  In Michigan, the only resale of tickets which is criminalized is those which are sold above face-value.  M.C.L.A. § 750.465(2).  The statute at issue

---

[13]Plaintiffs' Brief at pages 13-14.

[14]Plaintiffs' Brief at page 13.

[15]Defendant's Brief at page 7.

[16]Defendant's Brief at page 8.

[17]Defendant's Brief at pages 7-8 (citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 496; 102 S.Ct. 1186, 1192 (1982) (holding "[t]he ordinance is expressly directed at commercial activity promoting or encouraging illegal drug use. If that activity is deemed 'speech,' then it is speech proposing an illegal transaction, which a government may regulate or ban entirely" (citations omitted)); Katt v. Dykhouse, 983 F.2d 690, 695 (6th Cir. 1992) (discussing the illegality of insurance commission rebates in Michigan); Pittsburgh Press Co. v. Human Relations Comm'n, 413 U.S. 376, 388; 93 S.Ct. 2553 (1973) (holding that sex discrimination found in advertisement was illegal activity).

12

here criminalizes the resale of tickets at any price, whether it be above face-value, at face-value, and even below.

Defendant also relies on City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 428; 113 S.Ct. 1505 (1993), stating that the Court held the city could "prevent all newsracks from being placed on public sidewalks but nevertheless concluded that they could not allow newsracks by non-profit groups and ban only those newsracks that contained certain commercial publications."[18]  If anything, this bolsters Plaintiffs' argument.  Defendant here did not ban all ticket sales because tickets could still be sold at excepted locations.  By analogy, the ticket sellers at Ford Field and Comerica Park are to the certain commercial publications as the ticket sellers at Cobo are to the non-profit groups in Cincinnati; therefore, the City cannot treat the sellers at separate locations differently under the Supreme Court's decision in Cincinnati.

So, the question left is whether this classification is narrowly tailored to further a significant governmental interest under equal protection analysis.  The Prior Ordinance failed to set forth any governmental interest and the analysis need not go further; the Prior Ordinance should fail on equal protection grounds.  Therefore, it is recommended that the Court find there remains no genuine issue of material fact regarding same.  The Amended Ordinance does set forth a governmental interest and the issue of narrow tailoring will be discussed further in relation to same below.[19]

---

[18]Defendant's Brief at page 7.

[19]See Subpart B., supra, beginning on page 16.

4.      **Central Hudson Test**

Plaintiffs also argue that the Prior Ordinance violates the test set out in <u>Central Hudson</u>, 447 U.S. at 564; 100 S.Ct. 2350, governs restrictions on commercial speech.[20]  Plaintiffs contend that the Ordinances as issue govern "commercial" speech.[21]  Defendant does not challenge this contention and applies the <u>Central Hudson</u> test in its defense.[22]

> The State must assert a substantial interest to be achieved by restrictions on commercial speech.  Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.
>
> * * *
>
> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment.  For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

<u>Central Hudson</u>, 447 U.S. at 564, 566; 100 S.Ct. at 2350, 2351.

First, Plaintiffs allege that the speech concerns a lawful activity.  The legality of tickets for sale at face-value or below within the Prior Ordinance has already been established.[23]  Second, the

---

[20]The parties do not dispute that commercial speech is at issue.

[21]Plaintiff's Brief at pages 14-15.  <u>See</u> <u>also</u> Defendant's Brief at page 6.

[22]Defendant's Brief at pages 6-9, 11.

[23]<u>See</u> Subpart A, subsection 3, <u>infra</u>, at pages 12-13.

Prior Ordinance lacks any stated purpose, which has also already been discussed[24] and invalidates the Prior Ordinance under <u>Central Hudson</u> as well.  Third, Plaintiffs allege that the Prior Ordinance is not narrowly tailored.  In <u>Central Hudson</u>, the Court found that the state government failed to show that a less limiting restriction would further the interest of the state.  <u>Central Hudson</u>, 447 U.S. at 571, 566; 100 S.Ct. at 2350, 2354.  In the present case, the City's interest in enforcing the Prior Ordinance is unknown and thus an analysis of narrow tailoring that interest is impossible as previously stated under the equal protection analysis.[25]  Therefore, the Prior Ordinance also fails constitutional muster under the <u>Central Hudson</u> test.  Hence, it is recommended that the Court find that there remains no genuine issue of material fact regarding same.

---

[24]<u>See</u> Subpart A, subsection 3, <u>infra</u>, at page 13.  Further, because an interest has not been stated as to the Prior Ordinance, it would be futile to discuss whether that interest is narrowly tailored.

[25]<u>See</u> Subpart A, subsection 3, <u>infra</u>, at page 13.

**B.     Amended Ordinance**[26]

Plaintiffs argue that the Amended Ordinance does not further Defendant's stated interest under the <u>Central Hudson</u> Test.[27]  The difference between the Prior Ordinance and the Amended Ordinance includes:  the exception for the civic center facilities is no longer present, and there is a stated purpose.  The stated purpose is that "[t]his ordinance is declared necessary for the preservation of the public peace, health, safety, and welfare of the People of the City of Detroit." Section 5-15-54. Section 3.

The legality of the activity has already been established.  Therefore, we are left with whether the interest asserted by Defendant is "substantial," and if yes, "whether the regulation directly

---

[26]The Amended Ordinance reads in pertinent part:

Sec. 5-1-3.  Sale of tickets for admission  to any athletic event, concert, public entertainment, or shows prohibited or private property without permission, and on public places within five hundred  (500) feet of the structure where the ticket is to be used.

(a) No person shall stand, or remain, on private property without written permission from the owner, or he or she designee, for the purpose of selling, or offering for sale, any ticket of admission to an athletic event, a concert, a public entertainment, a show, or a theater.

(b) No person shall sell, or offer for sale, any ticket of admission to an athletic event, a concert, a public entertainment, a show, or a theater on any public street, alley, sidewalk or other public place that is within 500 feet of the structure which houses the athletic facility, the concert hall, the public entertainment facility, or the theater where the ticket will be used, including the civic center facilities which consist of Cobo Arena, Cobo Center, and the Joe Louis Arena.

* * *

Sec 5-15-54

Section 3.  This ordinance is declared necessary for the preservation of the public peace, health, safety, and welfare of the People of the City of Detroit.

[27]Plaintiffs' Brief at pages 17-18.

16

advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." <u>Central Hudson</u>, 447 U.S. at 564, 566; 100 S.Ct. at 2350, 2351.  Under <u>Central Hudson</u>, "the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." <u>Id.</u> at 564; 100 S.Ct. at 2350.  Further, "if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive."  <u>Id.</u>

"Public peace, health, safety, and welfare" are the interests asserted by Section 5-15-54. Section 3.   The Court found that the interests were substantial in the following cases.[28]  "[T]he State's interest in conserving energy is sufficient to support suppression of advertising designed to increase consumption of electricity.  In view of our country's dependence on energy resources beyond our control, no one can doubt the importance of energy conservation.  Plainly, therefore, the state interest asserted is substantial." <u>Central Hudson</u>, 447 U.S. at 564, 568; 100 S.Ct. at 2350, 2352. In <u>Capobianco v. Summers</u>, 377 F.3d 559, 562 (6th Cir. 2004), the court determined that the "State of Tennessee has a substantial interest in 'protecting the privacy of accident victims, preventing

---

[28]In <u>Berger v. City of Mayfield Heights</u>, 154 F.3d 621, 624 (6th Cir. 1998), a case dealing with rational basis analysis,

> [t]he Mayfield Heights City Council did not articulate any such rational relationship, other than to summarily conclude that the ordinance "was necessary for the immediate preservation of the public peace, health, and safety." As for the district court, the total discussion of the alleged rational relationship is expressed in the following two paragraphs of its opinion:
> Tall trees can cause damage by falling or dropping limbs. Trash litter and debris such as glass, metal debris, or pieces of cement are unsightly, provide habitat for disease-carrying vermin, and could injure trespassers. Trees and taller brush form structures on which poisonous vines can grow.

The Court held that this statue violated due process and equal protection under the fourteenth Amendment.  <u>Id.</u> at 626.  "Public peace, health, safety, and welfare," is exactly the interest stated by Section 5-15-54. Section 3.

overreaching by chiropractors and their agents and regulating the profession.'" (citation omitted).

In Discovery Network, Inc. v. City of Cincinnati, 946 F.2d 464, 468 (6th Cir. 1991), the Court held

that "Cincinnati interests in street safety and city aesthetics are substantial."

In the present case during depositions of the police officers, Sargent Lightfoot stated that she

is not aware of any substantial government interest that is furthered by the enforcement of the

Ordinance.[29]   Further, she testified that none of the venues have complained about scalpers

disturbing the peace.[30]   Additionally, she stated that she is not aware of any way in which her

enforcement of the Ordinance is preserving the public health or welfare.[31]

However, even assuming that this interest is substantial, it would still fail to serve the least

restrictive means.  As Plaintiffs point out,

> The City could have, but did not, limit the application of the Ordinance to the period
> of time immediately prior to the beginning of a scheduled event.  The City could
> have, but did not, create[] "ticket resale zones" as have other cities with large popular
> venues.  There are numerous less restrictive measures the City could have, but did
> not impose.[32]

Defendant argues that "one could stand on the outdoor patio at the Elwood Grill, which is within 500

feet of Ford Field, and if the restaurant owner did not object, offer to sell . . . tickets."[33]   However,

requiring one to get permission from a private restaurant is hardly the least restrictive means

possible.

---

[29]Plaintiffs' Brief at pages 7-8, 9.

[30]Plaintiffs' Brief at page 8. Sargent Lightfoot did testify that they received complaints about ticket sales in restricted areas of the venues.  Plaintiffs' Brief, Exhibit 4, p. 81.

[31]Plaintiffs' Brief at page 8.

[32]Plaintiffs' Brief at page 20.

[33]Defendant's Brief at page 8.

Further, examination of the possible charges under the Ordinance leads to ludicrous results. Hockeytown is within five hundred feet of the venues listed in the Ordinances.[34]  If one were to meet someone at Hockeytown, say for lunch, at any time, not necessarily even game day, and exchange a ticket for a Lions' game at or below face-value, they would be chargeable under the Current Ordinance.[35]  Further, even meeting someone under the same set of facts at a restaurant outside the five hundred feet restriction within the Ordinance without the owner's permission would be criminalized.[36]  Additionally, under the Current Ordinance, one cannot even buy tickets for friends and family, meet them outside Comerica park and exchange those tickets for face-value to those friends and family without fear of violating the statute.  Although one might argue that they are not "selling" or "offering to sell" the tickets to friends and family, an officer of the Vice Squad, charged with enforcing the Ordinance[37] would have no way of distinguishing between a cash exchange between friends or a "seller" and a stranger.[38]

Defendant attempts to argue under Seventh Circuit law that

Whatever one's view on where scalping fits in the economy--as legitimate participant or illegitimate manipulator--there is a reason why local governments often wish to enforce laws curtailing *where* the practice can take place--they perceive that the presence of scalpers surrounding the site of an event is an annoyance and can be, in some instances, even dangerous. Scalpers obviously need to approach potential customers. This adds to the congestion around a stadium or arena. As a California

---

[34] See Plaintiff' Brief at page 5.

[35] See Plaintiff's Brief at pages 3-5.

[36] See Plaintiff's Brief at page 5.

[37] See Plaintiff's Brief at pages 5-6.

[38] In these hypotheticals, it is demonstrated how the Current Ordinance is in fact overbroad. See Subpart A., infra, at page 5, n. 3.  However, Plaintiffs challenge the Ordinances on other grounds; therefore, an application of the overbreadth doctrine will not be discussed further.

court recognized, "Persons with tickets for sale may be expected to intrude themselves along the most heavily traveled pathways, audibly or visually demanding the attention of the tens of thousands who approach the [stadium] within a short period of time."

Arlotta v. Bradley Center, 349 F.3d 517, 520 (7th Cir. 2003) (quoting People v. Shepherd, 74 Cal. App.3d 334, 141 Cal.Rptr. 379 (1977), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2262, 56 L.Ed.2d 758 (1978). First, we are not bound by the law of another Circuit. See Hedrick v. Western Reserve Care System, 355 F.3d 444, 454 (6th Cir. 2004). It also bears repeating that this case deals with a statute that bans not only the illegal activity of scalping, but *also* the sale of tickets or offer to sell tickets at or below face-value. Additionally, Arlotta can be further distinguished because it dealt with a Section 1983 claim and not analysis under Central Hudson, as is the case here. Lastly, even the statute in Bradley was somewhat less restrictive; namely it had a time limitation, as suggested by Plaintiffs that persons were only prohibited "from selling tickets within 500 feet of the Bradley Center *starting two hours before and ending one hour after a scheduled event*." Arlotta, 349 F.3d at 520 (emphasis added). Therefore, even the Amended Statute fails to pass the Central Hudson test because "the governmental interest could be served as well by a more limited restriction on commercial speech." Central Hudson, 447 U.S. at 564; 100 S.Ct. at 2350. Therefore, it is recommended that the Court find there remains no genuine issue of material fact regarding same.

## V.   **CONCLUSION**

For the reasons stated above, it is respectfully recommended that Plaintiffs' Motion for Summary Judgment, with respect to liability only be **GRANTED**, consistent with this Report.

Pursuant to Fed. R.Civ.P 72(b) and 28 U.S.C. sec 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and filed specific, written objections within ten days after being served with a copy thereof. The parties are

further informed that failure to timely file objections may constitute a waiver of the further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F2d 947 (6th.Cir. 1981). In accordance with the provisions of Fed. R.Civ.P.6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

s/Wallace Capel, Jr.
**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**Dated:   September 6, 2005**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: not applicable,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Edward V. Keelean, 660 Woodward Avenue, Suite 1650, Detroit, Michigan 48226-3491, and Thomas G. Cecil, 144 E. Ash Street, P. O. Box 127, Mason, Michigan 48854.

s/James P. Peltier
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail:    pete_peltier@mied.uscourts.gov

22