UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY CARROLL, *et al.*,

        Plaintiffs,

Case No. 04-74984

v.

Hon. John Corbett O'Meara
CITY OF DETROIT,        Magistrate Wallace Capel, Jr.

        Defendant.

_____/

**OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART REPORT AND RECOMMENDATION**

Before the court is Magistrate Capel's September 6, 2005 Report and Recommendation regarding Plaintiffs' Motion for Summary Judgment on liability. Defendant submitted objections to the Report and Recommendation on September 21, 2005; Plaintiffs filed a response on September 30, 2005, and a corrected response on October 7, 2005.

Although the court adopts the magistrate's conclusion that Plaintiffs' motion should be granted, it does not adopt the magistrate's analysis or the substance of the report and recommendation. The court will engage in a *de novo* review of Plaintiffs' motion below.

**BACKGROUND FACTS**

Plaintiffs Bradley Carroll, Paul Jenvey, Wayne Conrad Schreck, and Jacoby Whitacre were all charged with violating the City of Detroit's anti-scalping ordinance. Although two versions of the ordinance are at issue here, both versions prohibit the sale of tickets to sports or entertainment events at certain locations within the city, at any price. See City of Detroit Ordinance § 5-1-3. Prior to April 7, 2004, this ordinance provided as follows:

> No person in the ordinary course of business shall stand or remain in any public street, alley, sidewalk or other public place, or without written permission from the owner or without written permission from the owner or his designee, on the property of another for the purpose of selling or offering for sale any theater tickets or tickets of admission to shows, concerts, athletic events or public entertainment; nor shall any person sell or offer for sale any theater ticket or ticket of admission to a show, concert, athletic event or public entertainment on any property within the outermost boundaries of any city block on which is located the theater, concert hall, athletic or public entertainment facility at which the ticket will be used, or the streets adjacent thereto, without written permission from the owner of the property or his designee, with the exception of civic center entertainment facilities; nor shall any person sell or offer for sale any theater tickets of admission to shows, concerts, athletic events or public entertainment at a price greater than printed on the ticket unless authorized by local or state law.

Detroit City Ordinance § 5-1-3 (hereinafter the "original ordinance").

Carroll and Whitacre each offered to sell one extra ticket to an Eminem concert in August 2003 for less than face value to undercover police officers outside Ford Field. The police detained them and confiscated their extra tickets. Subsequently, they were convicted of violating the original ordinance and ordered to pay fines and court costs.

Jenvey offered to sell his three extra tickets to a Bruce Springsteen concert in September 2003 for less than face value to undercover police officers outside Comerica Park. The police arrested Jenvey and he was charged with violating the original ordinance. Jenvey ultimately entered a "plea under advisement," which resulted in a dismissal without prejudice of the criminal charge. He paid a fine and court costs.

Effective April 7, 2004, § 5-1-3 was amended and provides as follows:

> (a) No person shall stand, or remain, on private property without written permission from the owner, or his or her designee, for the purpose of selling, or offering for sale,

>       any ticket of admission to an athletic event, a concert, a
>       public entertainment, a show, or a theater.
> (b)   No person shall sell, or offer for sale, any ticket of
>       admission to an athletic event, a concert, a public
>       entertainment, a show, or a theater on any public street,
>       alley, sidewalk or other public place that is within 500 feet
>       of the structure which houses the athletic facility, the
>       concert hall, the public entertainment facility, or the theater
>       where the ticket will be used, including the civic center
>       facilities which consist of Cobo Arena, Cobo Center, and
>       the Joe Louis Arena.

Detroit City Ordinance § 5-1-3 (hereinafter the "amended ordinance"). It is a misdemeanor to violate the amended ordinance; violators may be fined up to $500 and sentenced up to ninety days in jail. Detroit City Ordinance § 5-1-6.

Police cited Schreck for allegedly violating the amended ordinance on November 25, 2004, at the Detroit Lions football game at Ford Field. Schreck had attempted to purchase two tickets to the game at face value from an individual outside the stadium. Schreck's criminal case is stayed pending this court's determination of the constitutionality of the ordinance.

Plaintiffs brought this suit, styled as a class action, on December 22, 2004. Thereafter, Plaintiffs filed two separate amended complaints. Schreck filed a first amended class action complaint, challenging the amended ordinance on First Amendment grounds, on April 29, 2005. On the same day, Carroll, Jenvey, and Whitacre filed a separate first amended class action complaint, challenging the original ordinance on First Amendment, due process, and equal protection grounds. The court emphasizes that Plaintiffs are not challenging, and this case does not consider, the validity of the Michigan statute and a separate Detroit ordinance, both of which prohibit the sale of tickets at prices above face value. See M.C.L. § 750.465(2); City of Detroit Ordinance § 5-1-2.

Prior to filing their amended complaints, all Plaintiffs filed a motion to certify the class on March 24, 2005. The magistrate entered an order on July 20, 2005, granting Plaintiffs' motion to certify the class. The magistrate certified two classes: the first consisting of individuals charged with violating the original ordinance, from December 21, 2001 to April 6, 2004; and the second consisting of individuals charged with violating the amended ordinance, from April 7, 2004, to the date of judgment on which liability would be entered.

Prior to the July 20 certification order, Plaintiffs filed a motion for summary judgment on June 22, 2005. The motion was fully briefed; and the magistrate judge heard oral argument on July 26, 2005. The magistrate judge issued his report and recommendation regarding Plaintiffs' motion on September 6, 2005. Defendant, the City of Detroit, submitted objections to the report and recommendation, which are now before the court.

## LAW AND ANALYSIS

### I.      Maintenance of a Class Action

As a threshold matter, the court must consider the City's objections to the certification of the class. The magistrate entered an order on July 20, 2005, granting Plaintiffs' motion to certify the class. The City did not object to that order in a timely fashion. Instead, the City includes objections to the certification of the class in its objections to the magistrate's September 6, 2005 report and recommendation regarding Plaintiffs' motion for summary judgment. Because the City is correct that the magistrate did not have authority to enter the order certifying the class pursuant to 28 U.S.C. § 636(b)(1), however, the court will, of course, consider the City's belated objections and conclude that the certification order was of no effect. See 28 U.S.C. § 636(b)(1)(A) (expressly excluding motions to permit maintenance of a class action from

-4-

magistrate's jurisdiction).[1]

This court will now consider the certification issue *de novo*. Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. "Within the confines of Rule 23, the district court has broad discretion in deciding whether to certify the class." Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 884 (6th Cir. 1997). Rule 23 provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The City does not dispute that these elements have been met. Having reviewed Plaintiffs' motion to certify the class and the parties' briefs *de novo*, the court agrees that the elements set forth in Fed. R. Civ. P. 23(a) have been met, as described in Plaintiffs' motion.

The City contends that an additional requirement – that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy"– is not met here. See Fed. R. Civ. P. 23(b)(3). In assessing this element, the court should consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

---

[1] The magistrate could have considered the motion to certify the class and submitted a report and recommendation to this court. 28 U.S.C. § 636(b)(1)(B).

Fed. R. Civ. P. 23(b)(3).  The City argues that a class action is unnecessary because if Plaintiffs prevail, "the benefit would automatically accrue to others situated, and therefore, 'no useful purpose would be served by permitting this case to proceed as a class action.'"  Def.'s Br. at 5-6 (citing Craft v. Memphis Light, Gas, 534 F.2d 684, 686 (6th Cir. 1976)).  Contrary to the City's contention, however, Plaintiffs are seeking damages as well as declaratory relief.  As a result, if the named Plaintiffs prevail, the benefit of monetary damages would not accrue to others unless a class action is maintained.  Accordingly, the City's objection on this ground is not well taken.

The City also objects to the maintenance of a class on the basis that Plaintiffs' claims are barred by res judicata.  The court analyzes the City's claim under Michigan law.  See Ingram v. City of Columbus, 185 F.3d 579, 593 (6th Cir. 1999) ("Generally, we must give the same preclusive effect, under the doctrines of res judicata and collateral estoppel, to state court judgments that those judgments would receive in courts of the rendering state.").  The test for the application of res judicata (also referred to as claim preclusion) in Michigan is as follows:

> (1) the prior action was decided on the merits, (2) the decree in the prior decision was a final decision, (3) both actions involved the same parties or their privies, and (4) the matter in the second case was or could have been resolved in the first.

Ditmore v. Michalik, 244 Mich. App. 569 (2001).

The City contends that Plaintiffs should have raised their constitutional challenges to the ordinances in their criminal proceedings.[2]  Although Plaintiffs presumably could have challenged the constitutionality of the ordinances as a defense in their criminal proceedings, they could not have raised the cause of action they have asserted here.  Plaintiffs seek damages and

---

[2] The City does not raise, and therefore the court does not address, the circumstance in which a plaintiff actually raised and received a decision regarding the constitutional issues in the prior criminal proceeding.  See Allen v. McCurry, 449 U.S. 90 (1980).

declaratory relief for constitutional violations pursuant to 42 U.S.C. § 1983; the City does not explain how Plaintiffs could have obtained such monetary and equitable relief in their criminal proceedings.

"Claim preclusion does not extend from criminal prosecutions to civil actions. Our traditional division between civil and criminal procedure does not contemplate any opportunity for joining any civil claim with the criminal prosecution. Thus it is manifest that a different claim or cause of action is involved in a subsequent civil action between private parties or in an action brought by the criminal defendant against the government." 18A Charles Alan Wright et al., Federal Practice and Procedure § 4474, at 420 (2d ed. 2002). See also Ingram, 185 F.3d at 592-93 ("[W]e decline to extend res judicata to bar this claim where there is no indication that [the plaintiffs], who would have been in a defensive posture during criminal proceedings on the obstruction charges, could have raised their § 1983 claims during those proceedings."); Donovan v. Thames, 105 F.3d 291, 295-96 & n.5 (6th Cir. 1997).

For these reasons, the court finds that Plaintiffs' claims are not barred by res judicata. Further, consistent with the above discussion, the court grants Plaintiffs' motion to certify the class and adopts as its own the July 20, 2005 Order Granting Motion to Certify the Class issued by the magistrate judge.

## II.   Constitutionality of the Original Ordinance

### A.   First Amendment

Plaintiffs challenge the original ordinance on First Amendment, due process, and equal

protection grounds.[3]  Plaintiffs contend that the original ordinance violates the First Amendment because it unduly restricts commercial speech.  The City does not appear to dispute that the original ordinance restricts commercial speech (as opposed to noncommercial speech), insofar as it prohibits mere offers to sell tickets in public places and elsewhere.  The Supreme Court held that "even speech that does no more than propose a commercial transaction is protected by the First Amendment." City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 421 (1993). See also Edenfield v. Fane, 507 U.S. 761, 765-66 (1993) ("[I]t is clear that . . . personal solicitation is commercial expression to which the protections of the First Amendment apply."). The Court reasoned that commercial speech is protected by the First Amendment because, among other reasons, "commercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system." Discovery Network, 507 U.S. at 421 n.7 (citations omitted).

"Commercial speech, however, is 'linked inextricably' with the commercial arrangement that it proposes, so the State's interest in regulating the underlying transaction may give it a concomitant interest in the expression itself.  For this reason, laws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." Edenfield, 507 U.S. at 767.  The Court has developed a four-part test in analyzing commercial speech cases:

---

[3] Plaintiffs do not address the due process issue in their summary judgment motion, however.

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation itself directly advances the governmental interest asserted, and whether it is not more extensive than necessary to serve that interest.

Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 566 (1980). "It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." Edenfield, 507 U.S. at 770 (citation and internal quotation marks omitted).[4]

The City contends that the speech at issue here is not entitled to First Amendment protection because it does not "concern lawful activity." See id. Offers to sell tickets, the City points out, are illegal as set forth in the original ordinance and amended ordinance, which are being challenged here. As the magistrate recognized, however, this argument (that the ordinance criminalizes sales and that as a result Plaintiffs are precluded from challenging the constitutionality of the ordinance) is circular. Although Michigan generally prohibits the sale of tickets at a price above face value (see M.C.L. § 750.465(2)), the sale of tickets at face value or below is legal as a matter of state law. The original ordinance prohibits sales of and offers to sell tickets, regardless of price. Accordingly, the original ordinance restricts speech that concerns

---

[4] The City contends that the ordinances are entitled to a "presumption of validity." See Kutrom v. City of Centerline, 979 F.2d 1171, 1174 (6th Cir. 1992) ("The Supreme Court has stated repeatedly that an ordinance or statute directed toward economic or social welfare regulation adopted in exercise of police powers is presumptively valid, and the burden on the issue of reasonableness lies with the party challenging such an enactment."). This analysis and presumption is not applicable, however, to regulations that restrict commercial speech, which are analyzed pursuant to the Central Hudson test.

lawful activity; and the first element of the Central Hudson test is met.[5]

The next element concerns whether "the asserted government interest is substantial." Central Hudson, 447 U.S. at 566. The original ordinance itself contains no articulation of its purpose or the government interest that led to its passage. Further, the City provides no evidence concerning its alleged interest in restricting the sale of and offers to sell tickets. Rather, the City points to dicta in a Seventh Circuit case that "[local governments] perceive that the presence of scalpers surrounding the site of an event is an annoyance and can be, in some instances, even dangerous." See Arlotta v. Bradley Center, 349 F.3d 517, 520 (7th Cir. 2003). The City contends that the purpose of ordinances regulating ticket sales are "self-evident" and include the regulation of street traffic and congestion, as well as security concerns. See Def.'s Br. at 11-12.

As noted above, the City has the burden of justifying its restriction on commercial speech. See Edenfield, 507 U.S. at 770. "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Id. at 770-71. The City's mere articulation of its interest in regulating street traffic and congestion, as well as its unspecified concerns about "security," is insufficient to carry its burden of demonstrating that "the harms it recites are real." Id. The original ordinance itself contains no statement of purpose, and the City has not offered extrinsic evidence of a substantial governmental interest. As a result, the City has not shown that it truly

---

[5] Plaintiffs do not appear to challenge the original ordinance or amended ordinance to the extent they reach the sale of or offers to sell tickets above face value; and the court wants it to be clear that this opinion and order in no way affects the state's or City's prohibition of the sale of tickets at above face value.

enacted the original ordinance to further any interest in alleviating street traffic and congestion, or as a result of security concerns. Under such circumstances, courts have held ordinances that restrict commercial speech to be unconstitutional. See National Advertising Co. v. Town of Babylon, 900 F.2d 551, 555-56 (2d Cir. 1990) ("We have been unable to find a case where a court has taken judicial notice of an unstated and unexplained legislative purpose for an ordinance that restricts speech."); Desert Outdoor Advertising, Inc. v. City of Moreno Valley, 103 F.3d 814, 819 (9th Cir. 1996) (invalidating ordinance with no statement of purpose and where the city "has not shown that it enacted its ordinance to further any interest in aesthetics and safety").

Because the original ordinance contains no statement of purpose and the City has provided no extrinsic evidence of its substantial governmental interest in enacting the original ordinance, the ordinance fails to meet an essential element of the Central Hudson test and is, therefore, unconstitutional. See id.

However, even assuming that the City enacted the original ordinance in an attempt to address traffic or safety concerns, the City cannot meet the next essential element of the Central Hudson test, that the original ordinance "directly advance[s] the state interest involved." Central Hudson, 447 U.S. at 566. The original ordinance prohibited ticket sales near venues such as Ford Field and Comerica Park, but contained an exception for "civic center entertainment facilities," such as Joe Louis Arena and Cobo Center. See Detroit City Ordinance § 5-1-3 (1964). The City provides no explanation why its alleged interest in regulating street traffic or providing security is not equally present at Joe Louis Arena and Cobo Center as it is at Ford Field and Comerica Park. The exception for "civic center entertainment facilities" prevents the

original ordinance from directly advancing the City's alleged interests in addressing traffic and safety concerns.  See Greater New Orleans Broadcasting Assn. v. United States, 527 U.S. 173, 190-91 (1999) (broadcast regulations that irrationally distinguished between tribal casinos and privately operated commercial casinos held to not directly advance governmental interest and to be unconstitutional).

Moreover, the City has provided no evidence that persons attempting to sell tickets in a manner prohibited by the original ordinance genuinely cause traffic congestion or security problems.  See Weinberg v. City of Chicago, 310 F.3d 1029, 1038 (7th Cir. 2002) (ordinance prohibiting peddling in certain areas of city unconstitutional because "the City has not appropriately demonstrated that Weinberg or any other peddler creates the problems the City asserts they cause").  Accordingly, the original ordinance is unconstitutional for these reasons as well.

**B.      Equal Protection**

Plaintiffs contend, and the magistrate judge agreed, that the original ordinance also violates the Equal Protection clause. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440.  However, because this case concerns commercial speech, a higher level of scrutiny applies.  "Because regulation of commercial speech is subject to intermediate scrutiny in a First Amendment

challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review." Chambers v. Stengel, 256 F.3d 397, 401 (6th Cir. 2001). (See discussion of First Amendment standard infra.)

Under the original ordinance, as discussed above, the City permitted individuals to sell tickets outside "civic center facilities" such as Joe Louis Arena, while prohibiting such sales and offers to sell outside other facilities, such as Ford Field. The City advances no substantial governmental interest or rational basis for distinguishing between ticket sellers at different venues. Moreover, the City does not object to the magistrate's conclusion that the original ordinance violates the Equal Protection clause. In any event, this court agrees with the magistrate's conclusion that the original ordinance is constitutionally unsound in this respect as well.

### III.    Constitutionality of Amended Ordinance

Plaintiffs challenge the amended ordinance solely on First Amendment grounds. The amended ordinance is similar to the original ordinance except that it contains a statement of purpose and eliminates the exception for civic center entertainment facilities. As discussed above, the parties do not dispute that commercial speech is restricted by the amended ordinance and that the Central Hudson test applies. The court finds that the first element of the Central Hudson test is met because the speech at issue here concerns lawful activity – that is, offers to sell tickets at or below face value. Central Hudson, 447 U.S. at 566.

The next element concerns whether "the asserted government interest is substantial." Id. The amended ordinance provides that "[t]his ordinance is declared necessary for the preservation

of the public peace, health, safety, and welfare of the People of the City of Detroit."[6] This broad, generic statement of purpose does not assist the court in determining the City's true purpose in enacting the amended ordinance.

> Such broad, all encompassing statements [of purpose] tend to frustrate judicial inquiry into the real purposes of a governmental entity in instituting a restriction on protected activity. They permit after the fact rationalizations for regulations thereby allowing circumvention of the mandate that such measures be defended only on the basis of considerations actually contributing to their enactment.

Dills v. City of Marietta, 674 F.2d 1377, 1381 (11th Cir. 1982). In its brief, as discussed above, the City contends that the governmental interests of alleviating traffic congestion and in safety are "self-evident." As with the original ordinance, however, the City has provided no evidence that it enacted the amended ordinance to address traffic or safety concerns. Indeed, the City's witness, Sergeant Esther Lightfoot, testified as follows:

> Q: Has the City or have the venues complained that scalpers have caused traffic problems?
> A: No.
> Q: Have the venues complained that scalpers have disturbed the peace?
> A: No.
> Q: Are you aware of any way in which enforcing the Ordinance preserves the public health?
> A: No.
> \* \* \*

---

[6] Based upon the record provided to the court, it is unclear how this statement of purpose fits in to the Detroit city code, or how it should be cited. The statement appears at the end of the "Chapter 5 – Amusements" section, which includes the amended ordinance, § 5-1-3, as well as numerous other sections governing, *inter alia*, adult cabarets, billiards, bowling alleys, carnivals, dance studios, and taxi-dance halls. The statement, entitled "Section 3," does not appear to have its own code citation. For the purpose of this opinion, the court will assume that the statement of purpose relates to Chapter 5 of the code as a whole, including § 5-1-3.

> Q: Okay. How is the public – or is the public welfare preserved in any way by prohibiting sales of tickets at or below face value?
> A: I don't think so.

Lightfoot Dep. at 75-76.

As with the original ordinance, the City has failed to demonstrate that it enacted the amended ordinance to alleviate traffic and safety concerns or in furtherance of any other substantial governmental interest. Therefore, the amended ordinance is unconstitutional as well. See National Advertising, 900 F.2d at 555-56; Desert Outdoor Advertising, 103 F.3d at 819.

Further, assuming that the City enacted the amended ordinance in an attempt to address traffic or safety concerns, the City cannot meet the next essential element of the Central Hudson test, that the amended ordinance "directly advance the state interest involved." Central Hudson, 447 U.S. at 566. The amended ordinance prohibits the sale or offers to sell tickets on private property without written permission of the owner, at any time. For example, the amended ordinance would prohibit a person from offering to sell his extra Lions ticket to a friend at a restaurant in the City, without written permission from the owner. The amended ordinance also prohibits offers to sell tickets within five hundred feet of a venue such as Comerica Park, regardless of the time of day and whether a game will be played that day. As the magistrate judge noted, "one cannot even buy tickets for friends and family, meet them outside Comerica Park, and exchange those tickets for face-value . . . without fear of violating the statute. Although one might argue that they are not 'selling' or 'offering to sell' the tickets to friends and family, an officer of the Vice Squad, charge with enforcing the Ordinance, would have no way of distinguishing between a cash exchange between friends or a 'seller' and a stranger." Report and Recommendation, at 19.

The City offers no explanation how the amended ordinance, with its broad reach, directly advances its alleged interest in traffic safety and security, particularly with respect to the examples set forth above. Moreover, as with the original ordinance, the City has provided no evidence that persons attempting to sell tickets in a manner prohibited by the amended ordinance genuinely cause traffic congestion or security problems. Therefore, the amended ordinance is unconstitutional for these reasons as well. See Central Hudson, 447 U.S. at 566; Edenfield, 507 U.S. at 770-71 ("[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."); Weinberg, 310 F.3d at 1038.

## ORDER

Accordingly, IT IS HEREBY ORDERED that the magistrate judge's September 6, 2005 Report and Recommendation is ADOPTED IN PART and REJECTED IN PART, consistent with the above opinion.

IT IS FURTHER ORDERED that Plaintiffs' June 22, 2005 Motion for Summary Judgment is GRANTED. Judgment on liability will be entered and the matter of damages will be set for trial.

IT IS FURTHER ORDERED that Plaintiffs' March 24, 2005 Motion to Certify the Class is GRANTED and that the magistrate judge's July 20, 2005 Order Granting Motion to Certify the Class is ADOPTED as this court's order. Plaintiffs will propose in a timely manner their plan to

identify class members and give them notice of these proceedings.

                                      s/John Corbett O'Meara
                                      John Corbett O'Meara
                                      United States District Judge

Dated: January 18, 2006